UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **JANEKIA MITCHELL,**<br>    Plaintiff,<br><br>v.<br><br>**GADSDEN STATE<br>COMMUNITY COLLEGE,**<br>    Defendant. | Case No. 4:24-cv-1084-CLM |

### MEMORANDUM OPINION

Janekia Mitchell began working at Gadsden State Community College ("GSCC") in 2002, and in 2022 she became the Dean of Student Services. In her role as Dean, Mitchell hired a disabled woman for an open position at GSDD. Though Mitchell is not disabled herself, she now sues GSCC for disability discrimination in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, (Count I), and discrimination and retaliation in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* ("§ 504") (Counts II and III). GSCC moves to dismiss all three counts under Rule 12. (Doc. 17). For the reasons stated below, the court **GRANTS** GSCC's motion to dismiss.

### BACKGROUND[1]

1. *The facts:* Janekia Mitchell is a black female who started working for GSCC in 2002. By June 2022, Mitchell worked her way up to Dean of Student Services. In 2023, GSCC opened a position for a Dual Enrollment Specialist. One responsibility of the Enrollment Specialist was to visit schools on behalf of GSCC. As Dean of Student Services, Mitchell was responsible for selecting the Dual Enrollment Specialist. Ultimately, Mitchell chose Katelyn Passmore.

---

[1] GSCC seeks dismissal under Rule 12, so the court takes its facts from Mitchell's amended complaint, (doc. 16), and assumes they are true.

One month after Passmore took the job, she asked GSCC's Office of Disability Services ("ODS") to approve her use of a service dog while she worked. ODS approved Passmore's request. Passmore's use of a service dog while publicly representing GSCC irritated the college's president, Dr. Kathy Murphy. So Dr. Murphy called Mitchell to berate Mitchell for hiring Passmore. Mitchell told Dr. Murphy (her boss) that Passmore was a good candidate and that she could not have rejected Passmore's application simply because she requested an accommodation. About 10 days later, Dr. Murphy fired Mitchell with no explanation.

2. *The lawsuit*: Mitchell filed a charge with the EEOC that said, "I believe I was discriminated against based on retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended." (Doc. 1-1, p. 3). While Mitchell mentioned Passmore's request for accommodation and use of a dog in her EEOC charge, she neither identified Passmore's disability nor alleged a violation of the ADA or Rehabilitation Act. The EEOC issued Mitchell a right to sue letter without making any findings on the merits of Mitchell's charge.

Mitchell then sued GSCC, but she did not allege that GSCC violated Title VII of the Civil Rights Act. Instead, she pleaded three counts under the ADA and the Rehab Act. (Doc. 1). GSCC moved to dismiss Count's I and II of Mitchell's complaint. (Doc. 5). The court granted GSCC's motion and dismissed Counts I and II without prejudice. (Doc. 12). The court instructed Mitchell that she could replead her complaint if she (1) could overcome the jurisdictional issues identified in the court's order, and (2) could explain the basis of her retaliation claim in Count III. (Doc. 12). Mitchell amended her complaint, (doc. 16), and GSCC now moves to dismiss all counts under Rule 12 for lack of subject-matter jurisdiction and failure to state a claim, (doc. 17).

## STANDARD OF REVIEW

1. *Pleading generally*: Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] court should only grant a motion to dismiss [under Rule 12(b)(6)] where the defendant demonstrates that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief." *Am. United Life Ins. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).

2. *Immunity*: Immunity issues are normally construed as challenges to a federal court's subject-matter jurisdiction, properly raised under Rule 12(b)(1). A 12(b)(1) challenge may take the form of a facial or factual attack on the complaint. *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). A facial attack "requires the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [her] complaint are taken as true for the purposes of the motion." *Id.* (quotations omitted). And a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings … are considered." *Id.* (quotations omitted).

## DISCUSSION

GSCC asks the court to dismiss Mitchell's amended complaint on all counts. As before, the court addresses the counts in their pleaded order and quotes the heading Mitchell gives each count. Although the court pointed out the inconsistency between Mitchell's headings and numbered paragraphs in its prior order, as you'll see, Mitchell's headings *still* do not necessarily match the claim pleaded.

### Count I: "Title II of the ADA (Disability Discrimination)"

1. *The Original Complaint*: The heading of Count I in Mitchell's original complaint would indicate that she was pleading an ADA "Title II" claim under 42 U.S.C. § 12132. (Doc. 1, p. 7). The allegations within Count I, however, said that GSCC violated ADA Title I (42 U.S.C. § 12112(a)) when it fired Mitchell for associating with a disabled individual. (*See* doc. 1, ¶¶ 25-27). As the court pointed out in its prior order, GSCC has sovereign immunity from ADA Title I employment claims. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001). This is why Mitchell cast her claim as rising under Title II, § 12132. But Mitchell did not allege a violation of Title II, § 12132 in Count I. Nor is Mitchell disabled, so by its plain text, § 12132 does not apply to her.[2] *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019). Mitchell did not fix this problem in her amended complaint.

2. *The Amended Complaint*: Mitchell's amended complaint is largely identical to the first. To avoid GSCC's sovereign immunity, Mitchell again titles Count I as pleading a Title II claim:

> **COUNT I—Title II of the ADA (Disability Discrimination)**
>
> 27. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability shall, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[3] This

---

[2] ADA Title II prohibits public entities from denying **disabled persons** the benefit of public services, programs, or activities. 42 U.S.C. § 12132.

(Doc. 16, p.7) (highlight in CM/ECF). But Mitchell still alleges in the body of Count I that GSCC violated ADA Title I, § 12112, not Title II, § 12132. (Doc. 16, ¶¶ 34, 35). And she still relies on the same factual allegations.

Mitchell did add one thing to Count I: a citation to *McCullum v. Orlando Reg'l Healthcare Sys.*, 768 F.3d 1135, 1143 (11th Cir. 2014). Mitchell alleges that *McCullum* shows that the ADA provides associational standing for non-disabled persons. (*See* Doc. 16, ¶ 27). But *McCullum* doesn't apply to Mitchell's complaint because *McCullum* stemmed from Title III claims under the ADA and Section 504, not Title II claims. *See Kinsey v. Aledda*, No. 16-23330-CIV, 2018 WL 11352486, at *23 (S.D. Fla. Feb. 28, 2018) (citing *McCullum* and concluding the Eleventh Circuit has not determined whether an associational discrimination claim exists under Title II of the ADA or the Rehabilitation Act in a Title II claim)[3]. And Title III, along with Title I, are different from Title II because both expressly prohibit associational discrimination. Title I prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). Title III prohibits "exclud[ing] or otherwise deny[ing] equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

On the other hand, Title II contains no express prohibition against associational discrimination. *See* 42 U.S.C. § 12132. "That Title II does not include this enlarging language supports Congressional intent to omit associational discrimination claims from Title II." *Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1337-1342 (N.D. Ga. 2017). So even if Mitchell's header was enough to plead an ADA Title II claim—and it's not—the court would have to dismiss Count I because Title II creates no such claim.

---

[3] Here, and elsewhere in this opinion, the court cites to non-binding authority. While the court recognizes that these cases are not precedential, the court finds them persuasive.

5

Now back to the real question: Does the ADA Title I claim that Mitchell *actually* pleads survive Rule 12 scrutiny? It does not, for the same reason the court explained last time—*i.e.*, sovereign immunity. Mitchell alleges that GSCC violated of ADA Title I (42 U.S.C. § 12112(a)) when it fired her for associating with a disabled individual, Passmore. As explained, GSCC is a community college within the Alabama Community College System, *see* Ala. Code § 16-60-110.1, that operates as an arm of the State of Alabama. *See Williams v. John C. Calhoun Cmty. Coll.*, 646 So.2d 1, 2 (Ala. 1994) ("[Absolute] immunity extends to the state's institutions of higher learning"); *Jefferson Cnty. Dep't of Health*, 701 F.3d 655, 659 (11th Cir. 2012) (per curiam) ("The Eleventh Amendment protects the immunity of not only the states, but of state agencies and entities that function as an arm of the state.") (internal quotation omitted). The Supreme Court's holding in *Garrett* is still good law. *Garrett*, 531 U.S. at 374 (holding that the waiver of sovereign immunity was invalid for claims against the State pleaded under Title I of the ADA). So the court finds that GSCC is immune from the claim Mitchell pleads in the body of Count I. The court therefore **GRANTS** MSCC's motion to dismiss Count I for lack of jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

### COUNT II: "The Rehabilitation Act of 1973 (Job Discrimination)"

In Count II, Mitchell pleads that GSCC violated Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794). But like the ADA Title II, the plain language of the Rehab Act, § 504 prohibits only discrimination against disabled persons, not their associates: "No otherwise qualified individual ***with a disability*** ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a) (emphasis added). As my colleague in the Southern District of Florida observed:

> Although the Eleventh Circuit has expressly allowed an associational discrimination claim under Section 504, it did so where the allegedly discriminatory conduct fell under Title III of the ADA, *i.e.*, discrimination in public

> accommodations. *McCullum*, 768 F.3d at 1142-43. Other courts in this circuit have allowed associational discrimination claims under Section 504 where the allegedly discriminatory conduct fell under Title I of the ADA, *i.e.*, discrimination in employment. *See Whitfield v. Hart Cty., Ga.,* No. 3:13-cv-114, 2015 WL 1525187, at *9 (M.D. Ga. Apr. 3, 2015). In fact, Section 504 expressly states that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination ... shall be the standards applied under title I of the Americans with Disabilities Act of 1990." 29 U.S.C. § 704(d). As previously discussed, Titles I and III of the ADA expressly prohibit associational discrimination, whereas Title II does not.

*Kinsey*, 2018 WL 11352486, at *24. The *Kinsey* court ultimately determined that "[b]ecause the same standards govern discrimination claims under the Rehabilitation Act and the ADA, *Allmond v. Akal Sec., Inc.*, 558 F.3d 1312, 1316 n.3 (11th Cir. 2009), and because the Court has already found that associational discrimination is not a viable claim under Title II of the ADA, the Court [finds] that associational discrimination is not a viable claim under Section 504 in the context of Title II of the ADA." *Kinsey*, 2018 WL 11352486, at *24.

Mitchell is not disabled; Passmore is. So to claim that her firing violated Section 504 of the Rehabilitation Act, Mitchell relies on the anti-discrimination provision and 'associational clause' of ADA Title I. Mitchell is presumably importing these provisions by reference to Section 504(d), which provides that the "standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the [ADA] (42 U.S.C. 12111 *et seq*.) and the provisions of sections 501 through 504, and 510, of the [ADA] (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment." 29 U.S.C. § 794(d); (*see* doc. 16, p. 10).

7

Even if this ADA Title I work around helps Mitchell avoid the associational standing problem (an issue the court needn't decide here), it thrusts Mitchell head first back into the sovereign immunity problem that doomed Count I. Simply put, if Count II incorporates Title I of the ADA to determine GSCC's liability, then the court must hold that GSCC has sovereign immunity from liability. *See Garrett, supra.*

As a result, the court finds that Count II pleads a claim of associational discrimination under 29 U.S.C. § 794, by way of 42 U.S.C. §§ 12112(a) and 12112(b)(4).[4] For the reasons explained in Count I, the court lacks jurisdiction to hear that claim because GSCC has sovereign immunity. So the court will **GRANT** GSCC's motion to dismiss Count II.

---

[4] Because the court finds that Mitchell bases Count II on the 'associational clause' of ADA Title I, the court does not address the parties' arguments regarding the Eleventh Circuit's opinion in *Bledsoe v. Palm Beach County Soil and Water Conservation Dist.*, 133 F.3d 816, 820 (11th Cir. 1998). Mitchell says that under *Bledsoe*, Title II of the ADA encompasses public employment discrimination. (*See* docs. 16, p. 3 n.2, p. 10; doc. 19, pp. 6-8). GSCC counters that (a) *Bledsoe* does not apply here and, (b) if it does, *Bledsoe* is wrong. On the latter point, GSCC points out that *Bledsoe* has been rejected by every other circuit court of appeals to address the issue. *See Taylor v. City of Shreveport*, 798 F.3d 276, 282 n.23 (5th Cir. 2015) ("Like every Circuit that has recently considered the question, we reject the Eleventh Circuit's contrary conclusion in *Bledsoe* []" that claims of discrimination in public employment fall under Title II of the ADA) (citing *Brumfield v. City of Chicago*, 735 F.3d 619, 622–30 (7th Cir. 2013); *Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 167–72 (2d Cir. 2013); *Elwell v. Okla. ex rel. Bd. of Regents of the Univ. of Okla.*, 693 F.3d 1303, 1305–14 (10th Cir. 2012); *Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1171–84 (9th Cir. 1999)).

Thankfully, this opinion does not turn on *Bledsoe*, so the court needn't address the issue further—except to make this observation: In deciding *Bledsoe*, the Eleventh Circuit deferred to the DOJ's regulations that interpret ADA Title II, as was then allowed by *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). *See Bledsoe*, 133 F.3d at 822. But the Supreme Court has since overruled *Chevron*. *See Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 410 (2024). So it could be that *Loper Bright* has undermined *Bledsoe's* holding to the point of abrogation.

**COUNT III:** "The Rehabilitation Act of 1973 (Retaliation)"

In Count III, Mitchell alleges a retaliation claim under Section 504 of the Rehab Act, 29 U.S.C. § 794, and incorporates the anti-retaliation provision from Title V of the ADA, 42 U.S.C. § 11203(a): "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). Retaliation claims under the Rehabilitation Act are assessed using the same framework as Title VII retaliation claims. *See Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec.*, 410 F. App'x 243, 245 (11th Cir. 2011). So to establish a prima facie claim of retaliation under Title VII, Mitchell must demonstrate "(1) that she engaged in a statutorily protected expression; (2) that she suffered an adverse employment action; and (3) and that there is some causal relationship between the two events." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

As to the first element, a "statutorily protected expression" means "oppos[ing] any act or practice made unlawful by" the Rehabilitation Act, which by incorporation really means "oppos[ing] any act or practice made unlawful by" the ADA. 42 U.S.C. § 12203. That is what Mitchell alleges. She sums up her claim by explaining that "Mitchell voiced opposition against a practice that would have been unlawful under the Rehabilitation Act – expressing opposition to refusing to hire and/or terminate an individual who could perform the essential functions of his or job whether with or without reasonable accommodation because such actions are unlawful under the Rehabilitation Act." (Doc. 19, pp. 11-12).

Count III of the amended complaint goes on to cite ADA Title I (42 U.S.C. § 12112) and its implementing regulations. (Doc. 16, pp. 14-15, ¶¶ 57-58) (citing 29 C.F.R. 1630.5 and 29 C.F.R. 1630.6). But these regulations say nothing about retaliation, and do not relate to the retaliation provisions of the ADA and its implementing regulations. Mitchell's allegations more accurately implicate 29 C.F.R. § 1630.9 (making it unlawful to refuse to provide reasonable accommodation) and 29 C.F.R. § 1630.12 (restating the antiretaliation provision in § 12203(a) of ADA Title V). In any event, the conduct that Mitchell opposed, and that serves as the basis of her retaliation claim that would violate ADA Title I, was "expressing opposition to refusing to hire and/or terminate an

9

individual who could perform the essential functions of his or job whether with or without reasonable accommodation[.]" (Doc. 19, pp. 11-12). And as the Eleventh Circuit has explained, when pleaded against a sovereign state or its agency, this retaliation claim is barred by sovereign immunity.

In *Dupree v. Owens*, the Eleventh Circuit held that state immunity bars ADA Title V retaliation claims if a violation of ADA Title I serves as the predicate act the plaintiff opposed. 92 F.4th 999, 1007 (11th Cir. 2024). "A retaliation claim under Title V is predicated on an individual suffering a harm post-asserting rights under a separate ADA provision." *Id.* But States have sovereign immunity from claims asserted under ADA Title I. *See id.* "Therefore, when the underlying provision—here, Title I—does not allow a plaintiff to assert a claim against the State, it logically follows that a Title V claim that is based on the exercise of a right arising only from Title I cannot be levied against the State." *Id.* That is what we have here.

Although Mitchell packages her claim as arising out of the Rehabilitation Act, the practice that she opposed, firing/refusing to hire Passmore because she is disabled, is an act that is unlawful under Title I of the ADA. And because Mitchell's Rehabilitation Act claim draws its anti-retaliation provision from ADA Title V, it follows that *Dupree* applies with equal force here. So Mitchell's retaliation claim in Count III, like her first two counts, is barred by sovereign immunity.[5] The court therefore **GRANTS** GSCC's motion to dismiss Count III. (Doc. 17).

—

To sum up, Mitchell pleads all three counts to avoid GSCC's sovereign immunity to claims under Title I of the ADA. But all three counts ultimately hinge on ADA Title I. So the court lacks jurisdiction to hear any of them.

---

[5] Because the court finds that Count III is barred by sovereign immunity, the court does not address or make any determination as to GSCC's argument that Mitchell did not engage in any protected activity. (*See* doc. 17, pp. 12-14).

10

## CONCLUSION

For these reasons, the court **GRANTS** GSCC's Motion to Dismiss (doc. 17) because the court lacks subject-matter jurisdiction to hear any of Mitchell's claims. And because the court has allowed Mitchell to amend her complaint to give this court subject-matter jurisdiction, the court will not allow Mitchell to amend her complaint again.

The court will enter a separate order consistent with this memorandum opinion that **DISMISSES** Mitchell's amended complaint **WITHOUT PREJUDICE** and directs the Clerk to close this case.

**DONE** and **ORDERED** on February 9, 2026.

*/s/ Corey L. Maze*
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE